**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **SERGEI ALEXANDROVICH MALTCEV** | ) | |
| 23, Ammochostou str. | ) | |
| Potamus Germosogia | ) | |
| Limassol | ) | |
| Cyprus | ) | |
| 4045 | ) | |
| | ) | |
| _Plaintiff,_ | ) | |
| | ) | Case No. 1:26-cv-1705 |
| v. | ) | |
| | ) | |
| **BRADLEY T. SMITH, in his official capacity as** | ) | **COMPLAINT FOR** |
| **Director of the United States** | ) | **DECLARATORY AND** |
| **Department of the Treasury,** | ) | **INJUNCTIVE RELIEF** |
| **Office of Foreign Assets Control** | ) | |
| 1500 Pennsylvania Avenue, NW | ) | |
| Freedman's Bank Building | ) | |
| Washington, D.C. 20220 | ) | |
| | ) | |
| _Defendant,_ | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **THE UNITED STATES DEPARTMENT** | ) | |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) | |
| **ASSETS CONTROL** | ) | |
| 1500 Pennsylvania Avenue, NW | ) | |
| Freedman's Bank Building | ) | |
| Washington, D.C. 20220 | ) | |
| | ) | |
| _Defendant._ | ) | |

_____

Plaintiff Sergei Alexandrovich Maltcev brings this Complaint to Compel Agency Action Unreasonably Delayed against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of his complaint alleges the following:

**INTRODUCTION**

1.      "Sanctions should not linger so long that their intended effects create unintended consequences. The most effective actions are aggressive and targeted, with defined timelines to drive specific effects. Sanctions are meant to change behavior, not to punish populations. Sanctions left in place for years with no visible and tangible changes in behavior can have generational impacts that are nearly impossible to predict." Secretary of the Treasury Scott Bessent, *Remarks Before the No Money for Terror Conference*, May 19, 2026, *available at* https://home.treasury.gov/news/press-releases/sb0500.

2.      This is a civil action that seeks the Court's intervention to compel Defendants to issue a final determination on Plaintiff's Petition for Administrative Reconsideration ("Petition") of the economic sanctions Defendants imposed on him in 2022. Plaintiff submitted his Petition under Defendants' delisting regulations, 31 C.F.R. § 501.807, over three years ago, and Defendants have not substantively engaged on his Petition in over a year, despite Defendants' acknowledgement that they have no further questions.

3.      Plaintiff is a former senior official of Russia's largest bank who immediately resigned from his position in response to Russia's military invasion of Ukraine. On May 8, 2022, Defendant OFAC designated Plaintiff pursuant to Executive Order ("E.O.") 14024 in connection to his employment with Sberbank, and added his name to the Specially Designated Nationals and Blocked Persons List ("SDN List"). As a result of Plaintiff's designation, all property in which he had an interest that was or came within the United States was blocked. In addition, U.S. persons are prohibited from engaging in transactions or dealings with him absent an applicable statutory

exemption or a license issued by OFAC, and foreign persons who engage in certain transactions or dealings with him are themselves subject to designation under E.O. 14024.

4.      Plaintiff was already in the process of resigning from his position with Sberbank when he was sanctioned, and within days of his designation Plaintiff's resignation was officially accepted. In doing so, Plaintiff willingly forfeited his generous salary, annual bonus, benefits, and pension. Following his resignation, Plaintiff took concrete steps to fully divest himself from Russia, including by moving his family to Cyprus—where he obtained permanent residency—and selling his Moscow apartment, family vehicle, and all his investments in Russian companies. As a result of his actions, Plaintiff has severed his ties to Sberbank, the Russian financial sector, and the Russian Federation more broadly—conforming his conduct to U.S. foreign policy goals.

5.      Plaintiff informed Defendants of his immediate resignation from Sberbank and relocation from Russia on May 18, 2023, and has transparently responded to Defendants' inquiries throughout the delisting process. Despite notifying Defendants of his resignation over three years ago, Defendants have failed to adjudicate his Petition—prolonging the harms Plaintiff continues to suffer as a direct result of his designation.

6.      Throughout the delisting process, Plaintiff has responded to two questionnaires, and submitted a supplement where he informed Defendants that his sanctions were lifted by the Canadian government, and that he had obtained Vanuatu citizenship for himself and his family as a precaution against the revocation of his Russian citizenship. Plaintiff's most recent substantive filing occurred nearly a year ago, on May 29, 2025.

7.      Throughout the process, Plaintiff sought updates from Defendants, urging them to adjudicate Plaintiff's Petition and notifying them of similarly situated persons who had their sanctions lifted in much shorter timespans, without receiving any explanation for the delay.

Plaintiff was consistently told that Defendants were seriously considering Plaintiff's matter, and that he should remain patient. Following Plaintiff's persistent appeals, on January 16, 2026, Defendant OFAC stated that the agency is "working diligently to issue a final determination" and that Defendants had "no additional questions" for Plaintiff.

8.      Most recently, on April 24, 2026, Defendant OFAC stated that the agency "expects to issue its determination in this matter in the coming months, barring any unforeseen circumstances." Notwithstanding Defendants' reassurances, Plaintiff's May 18, 2023 Petition continues to remain pending Defendants' adjudication.

9.      Plaintiff's sanctions designation—and Defendants' failure to adjudicate the Petition—has caused substantial harm to Plaintiff personally, professionally, and financially. This includes by causing the blocking of Plaintiff's access to assets located in the West, barring him from employment opportunities outside of Russia, and upending his ability to conduct basic transactions to support his and his family's livelihood. Defendants have exacerbated Plaintiff's ongoing harm by unreasonably delaying adjudication of the Petition.

10.     Defendants' prolonged and unexplained delay in adjudicating Plaintiff's Petition is unreasonable as a matter of law. Accordingly, Plaintiff respectfully requests an order directing Defendants to issue a final determination on his Petition by a date set by this Court.

### JURISDICTION AND VENUE

11.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12.     This Court may grant the relief requested herein pursuant to 5 U.S.C. § 702, which waives the sovereign immunity of the United States for civil actions seeking relief other than

4

money damages against a United States agency or officer acting in an official capacity. Further, the Court may grant the relief requested herein pursuant to 5 U.S.C. § 706(1), which authorizes this Court to compel agency action unlawfully withheld or unreasonably delayed. The Court may grant declaratory and further necessary relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

13.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e), as Defendants are officers and agencies of the United States residing in the District of Columbia, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## **THE PARTIES**

14.    Plaintiff Sergei Alexandrovich Maltcev is a citizen of the Russian Federation and the Republic of Vanuatu, and is a lawful resident of the Republic of Cyprus. Plaintiff was designated by Defendant OFAC as a Specially Designated National ("SDN") pursuant to E.O. 14024 on May 8, 2022, and remains on the SDN List as of the date of this filing.

15.    Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O. 14024 and the implementing regulations located at 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and "Russian Harmful Foreign Activities Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 14024 and is responsible for adjudicating the Petition.

16. Defendant Bradley T. Smith is the Director of OFAC. In this role, Director Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for administrative reconsideration. Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Designation Under E.O. 14024

17. On May 8, 2022, Defendant OFAC designated Plaintiff pursuant to sections 1(a)(i) and 1(a)(iii)(C) of E.O. 14024 for operating or having operated in the financial services sector of the Russian Federation economy and for being or having been a leader, official, senior executive officer, or member of the board of directors of Public Joint Stock Company Sberbank of Russia, an entity whose property and interests in property are blocked pursuant to E.O. 14024. *Notice of OFAC Sanctions Action*, 87 FED. REG. 29,450 (May 13, 2022); Press Release, U.S. Dep't of the Treasury, *U.S. Treasury Takes Sweeping Action Against Russia's War Efforts*, May 8, 2022, *available at*: https://home.treasury.gov/news/press-releases/jy0771. The press release announcing Plaintiff's designation stated only that he was a current or recent Sberbank executive. *Id.*

18. At the time of his designation, Plaintiff was Deputy Chairman of Sberbank—a position he was already in the process of resigning from due to his opposition to the Russian invasion of Ukraine. On May 17, 2022, just nine (9) days after his designation, Plaintiff's resignation from Sberbank was formally accepted. Following his resignation from Sberbank, Plaintiff has not held any position or employment with Sberbank, any other Russian financial institution, nor any other company. Moreover, in September 2022, Plaintiff relocated with his family from the Russian Federation to the Republic of Cyprus, where they have resided continuously since.

19.    As a result of his designation, Plaintiff's name was added to the SDN List, and all property in which he has an interest that was or came within the United States is blocked. In addition, U.S. persons are prohibited from engaging in transactions or dealings with him absent an applicable statutory exemption or a license issued by Defendant OFAC. Moreover, foreign persons who engage in certain transactions or dealings with him are themselves exposed to risk of designation under E.O. 14024.

**B.    Plaintiff's May 18, 2023 Petition for Administrative Reconsideration**

20.    Defendant OFAC administers regulatory procedures by which persons designated pursuant to its regulations and identified on the SDN List may seek to have the sanctions lifted. *See* 31 C.F.R. § 501.807. Specifically, OFAC's delisting procedures allow interested parties to request reconsideration of their designations by arguing that there is an insufficient factual or legal basis for the designation; asserting that the circumstances resulting in the designation no longer apply; or proposing remedial measures that they believe would negate the basis of the designation, if adopted. *Id*.

21.    Defendant OFAC has also published guidance for persons seeking delisting. U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Filing a Petition for Removal from an OFAC List*, *available at*: https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list (last visited May 11, 2026). OFAC's guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. The guidance further identifies as examples of circumstances supporting removal that there has been "a positive change in behavior" or that "the basis of [the] designation no longer exists." *Id*.

22.    On May 18, 2023, Plaintiff filed a Petition for Administrative Reconsideration of his designation pursuant to Defendants' regulations at 31 C.F.R. § 501.807.

23.    Plaintiff's Petition explained that he had resigned from his position as the Deputy Chairman of Sberbank's Board of Directors on May 17, 2022 and relocated to Cyprus in September 2022. Therefore, the Petition argued that Plaintiff "is no longer employed by Sberbank, no longer lives in the Russian Federation, . . . no longer operates in the financial services sector of the Russian Federation economy, and likely cannot work in that sector again owing to his renunciation of his prior job and relocation outside of Russia."

24.    Consistent with Defendants' procedures, Plaintiff's Petition asserted that his resignation from Sberbank and relocation from Russia constituted a change in circumstances sufficient to warrant his removal. Additionally, Plaintiff's Petition proposed seven (7) remedial measures—such as written certification that Plaintiff has no direct or indirect involvement with Sberbank, will not have such involvement with Sberbank in the future, and will not engage in any other sanctionable activities—intended to negate the basis for his designation. Defendants acknowledged receipt of the Petition and assigned it Case ID: RUSSIA-EO14024-33695.

**C.    Defendants' First Questionnaire & Subsequent Communications**

25.    On October 19, 2023, Defendants issued a fourteen (14) question questionnaire ("First Questionnaire") seeking additional information regarding—among other things— Plaintiff's employment with Sberbank, his resignation, and any employment held with other entities operating in the Russian financial sector. In addition, Defendants inquired into Plaintiff's sources of income, his relationships with other current and former Sberbank employees and Russian officials, and details on his personal financial holdings with several sanctioned Russian banks.

8

26.     Plaintiff responded to Defendants' First Questionnaire on January 11, 2024, providing eighteen (18) pages of substantive responses and five (5) exhibits, including Plaintiff's resignation letter and family passports. Plaintiff's response explained that he has been unemployed since his resignation from Sberbank and has not sought alternative employment, "as [Plaintiff] has no interest in working in Russia and has no ability to work for European companies given his sanctions designation." The response also explained that Plaintiff "was so disturbed by the invasion of Ukraine that, on March 12, 2022, he attempted to tender his resignation, but was not permitted to resign until May 17, 2022. In doing so, [Plaintiff] willingly forfeited his deferred payment of his annual bonus, which accounted for approximately 70% of his annual income . . . [and] took the significant step of distancing himself from the actions of the Government of Russia by moving his family from Russia to Cyprus."

27.     Plaintiff's response also requested that Defendants adjudicate his Petition as soon as possible, and notified them of other Russian bankers similarly designated under E.O. 14024 for their employment who had since had their sanctions lifted.

28.     On April 3, 2024, Plaintiff supplemented his First Questionnaire response with an eleven (11) page document, updating Defendants on the complete closure of all familial accounts historically held with Sberbank and on his family's acquisition of Vanuatu citizenship in February 2024. Plaintiff's supplement also notified Defendants that, on February 14, 2024, Canada lifted the sanctions it had previously imposed on him.

29.     On June 13, 2024, Plaintiff sent the first of a long series of substantive emails requesting an update on, and the adjudication of, Plaintiff's Petition. Specifically, Plaintiff, through counsel, stated that the case had been pending for more than a year, with Plaintiff's First Questionnaire response submitted over five (5) months prior. The email also explained that

9

Plaintiff had resigned from his position with Sberbank more than a year ago, had relocated from Russia, had his Canadian sanctions removed, and obtained additional citizenship outside of Russia. Plaintiff's counsel requested that Defendants expedite its adjudication of his Petition and provide a timeline for adjudication, or otherwise explain the reason for the lengthy delay.

30.    Defendants confirmed receipt of the email on June 21, 2024, and on July 10, 2024, Defendants responded with their usual boilerplate language: "[p]lease know that your client's request for reconsideration is currently under review. Unfortunately, we are unable to provide a timeline for final adjudication, but rest assured that your case is receiving active attention."

31.    On September 18, 2024, Plaintiff again sought an update on Defendants' adjudication and requested an explanation for the continued delay. Specifically, Plaintiff's counsel explained that it had now been sixteen (16) months since the Petition was submitted, and nine (9) months since his response to the First Questionnaire, despite having demonstrated that the circumstances underlying his designation had changed following his resignation from Sberbank. Plaintiff also explained that, while he is seeking to permanently relocate his family outside of Russia, his continued designation was threatening his ability to continue doing so given the restrictions on obtaining non-Russian bank accounts, employment, and residency.

32.    Defendants responded on September 20, 2024, stating: "[p]lease know that your client's request for reconsideration is currently under review. Unfortunately, we are unable to provide a timeframe for final adjudication, but rest assured that your case is receiving active attention and OFAC is working diligently to issue a final determination."

33.    On November 14, 2024, Plaintiff's counsel escalated the matter to Defendant OFAC's Assistant Director, noting that the Petition had been outstanding for eighteen (18) months and that Plaintiff had responded to Defendants' First Questionnaire eleven (11) months prior.

10

Plaintiff's counsel requested any indication that the Petition would be adjudicated in the near term and sought any explanation for the prolonged delay. Defendant OFAC's Assistant Director responded the same day, stating: "Your client's case is under adjudication and we are currently evaluating the need for a few clarification questions. I will get back to you over the next couple of weeks to let you know either way."

34.    Notwithstanding Defendants' commitment, Plaintiff did not receive any further questions or communications from Defendant OFAC, prompting another request for a status update on February 13, 2025. On February 14, 2025, Defendant OFAC's Assistant Director responded, stating: "[w]e do not have any additional questions for [Plaintiff], however[,] we did not receive complete responses to some of our questions and no response to one of our questions. The information we are seeking is important for us to conduct a fulsome review."

35.    Plaintiff's counsel responded the same day, requesting that Defendants identify the specific questions which they believed incomplete responses were provided for. On February 15, 2025, Defendant OFAC confirmed that the agency would revert with "the list of questions that we believe were not fully answered."

**D.    Defendants' Second Questionnaire**

36.    On April 1, 2025, Defendants issued a second questionnaire seeking responses to three (3) questions regarding: (i) Plaintiff's sources of income; (ii) every entity Plaintiff has held shares in; and (iii) an update on Plaintiff and his family's employment, residential status, and travel.

37.    On April 15, 2025, Plaintiff's counsel requested clarification on whether the questionnaire was seeking information on public entities Plaintiff has held shares in, or whether

11

the question was limited to private entities. Without having received a confirmation of receipt, Plaintiff's counsel again followed up with Defendants on April 22, 2025 seeking a response.

38.     On April 23, 2025, Defendants responded by issuing a revised version of the April 1, 2025 questionnaire ("Second Questionnaire"). The Second Questionnaire included four (4) questions, this time including separate questions for public and private entities in which Plaintiff has held shares.

39.     Plaintiff responded to the Second Questionnaire on May 29, 2025.

**E.     Plaintiff's Continued Requests for a Final Determination**

40.     On September 26, 2025, Plaintiff again contacted Defendants, explaining that it had been nearly four (4) months since Plaintiff's Second Questionnaire response, and seeking an update on the timeline for adjudication or an explanation for what circumstances were causing the continued delay.

41.     On September 29, 2025, Defendant OFAC replied with its familiar boilerplate response, stating: "Please know that your client's request for reconsideration is currently under review. Unfortunately, we are unable to provide a timeframe for final adjudication but rest assured that your client's case is receiving active attention."

42.     Plaintiff again sought a status update on January 14, 2026, to which Defendants responded on January 16, 2026. Again, Defendant OFAC stated that "we are unable to provide a timeline for final adjudication, but OFAC is working diligently to issue a final determination." Notably, Defendants' January 16, 2026 response also stated that "at this time, we have no additional questions for your client."

43.     Finally, on April 15, 2026, Plaintiff again sought an update on its adjudication of Plaintiff's May 18, 2023 Petition. In seeking that update, Plaintiff, through counsel, identified

seven similarly situated persons who were designated for being an executive, officer, or director of sanctioned Russian banks such as Sberbank, who had their petitions adjudicated and sanctions removed in less time than Plaintiff. Plaintiff's counsel also reiterated that Plaintiff "responded to OFAC's last questionnaire about a year ago. At the time, we were told that OFAC's questionnaire was following up on information that was not fully responded to previously. . . . In light of the length of the delay, the clear change in circumstances, and the absence of any remaining information requests, we would appreciate an update concerning this matter, and [] determine if there is a path to adjudication through the normal administrative process."

44.     Defendant OFAC replied to Plaintiff's email on April 24, 2026, stating: "[w]e are aware of the age of this case, and we are working diligently to issue a final determination. OFAC expects to issue its determination in this matter in the coming months, barring any unforeseen circumstances. We thank you and your client for your continued patience and will reach out to you when we have future updates."

45.     As of the date of this complaint, OFAC has not adjudicated the Petition nor issued another questionnaire.

### F.     Plaintiff's Ongoing Harm

46.     Defendants' designation of Plaintiff—and their failure to adjudicate the Petition— has caused substantial harm to Plaintiff personally, professionally, and financially, tarnishing his reputation and upending his ability to conduct basic transactions to support his livelihood.

47.     Plaintiff's designation not only prevents him from working in the financial services sector in Russia—the only industry in which he has any meaningful professional experience—it also poses significant obstacles to Plaintiff's ability to obtain any employment outside of Russia. This is because employers risk exposure to U.S. sanctions for hiring Plaintiff, as would banks for

processing payments of any compensation he would receive were he to gain employment. As such, Plaintiff is effectively excluded from viable employment opportunities outside of Russia for as long as he remains on the SDN List.

48. Plaintiff's designation has caused, and continues to cause, severe disruption to his family and his ability to provide for their needs. Indeed, Plaintiff was forced to sell the family car and their home in Moscow, as well as his Russian investments, to afford their modest lifestyle in Cyprus and his children's education. His continued designation impairs his ability to provide for his family and manage routine family financial affairs. This is because Plaintiff has faced, and continues to face, extensive difficulties with respect to accessing his life savings, as banks and other service providers refrain from engaging in transactions with him out of fear of their own sanctions exposure. For instance, Plaintiff has been unable to access his investment portfolio held at Julius Bär in Switzerland since his designation. Plaintiff's spouse has likewise been unable to complete routine banking transactions due to Plaintiff's designation, including in transferring funds out of Russia to support their new life in Cyprus.

49. Plaintiff's continuing designation has a chilling effect on third parties. Banks, brokerages, professional service providers, and counterparties refuse to deal with Plaintiff or his family so long as he remains on the SDN List, even with respect to routine personal and family transactions. Indeed, Plaintiff is effectively walled off from the global financial system, making life outside of Russia—which Plaintiff is fervently committed to—nearly impossible.

50. Plaintiff's continuing designation also imposes significant and ongoing reputational harm, despite his sincere efforts to distance himself from the actions of the Russian government. By being identified on the SDN List, Plaintiff is publicly branded—alongside oligarchs, arms

dealers, corrupt officials, and other malign actors—as a person whose conduct the United States has determined to be contrary to its foreign policy and national security interests.

51.     Plaintiff's ongoing suffering is a direct result of Defendants' failure to adjudicate his Petition.

## CAUSE OF ACTION

### COUNT I

DEFENDANTS' FAILURE TO ADJUDICATE PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

52.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

53.     The APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further requires reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

54.     Defendant OFAC's regulations expressly set out the administrative reconsideration procedure through which Plaintiff submitted his Petition. 31 C.F.R. § 501.807. The regulation contemplates that Defendant OFAC will conduct that review and reach a determination in due course. Accordingly, Plaintiff seeks to compel a discrete agency action that Defendants are legally required to take; namely, adjudication of Plaintiff's Petition.

55.     Plaintiff's Petition has been pending before Defendants for over three (3) years. During that period, Plaintiff has provided comprehensive responses to two questionnaires. Further, nearly a year has passed since Plaintiff's last substantive submission, and nearly six (6) months

15

have passed since Defendants affirmatively represented that they had "no additional questions" in connection with Plaintiff's Petition.

56.     Defendants' delay is not justified by the complexity of Plaintiff's arguments for removal or the factual record. Plaintiff was sanctioned for his employment with Sberbank and participation in Russia's financial services sector. Plaintiff immediately resigned from his employment with Sberbank, resettled his family outside of Russia, and divested his Russian assets. Plaintiff has not worked in Russia's financial sector—nor any other sector—since his resignation. Defendants have been made aware of these facts since at least May 18, 2023, and have received fulsome responses to their additional, clarifying, or corroborating questions. Defendants have acknowledged that they have no further questions, and have repeatedly claimed that a decision will be made soon, but have thus far failed to adjudicate the Petition as they are legally required to do.

57.     The interests prejudiced by Defendants' delay—i.e., Plaintiff's ability to work, to provide for his family, to manage personal financial affairs, and to be free from the reputational harm of an unjustified continuing designation—are substantial. Absent relief under the APA, Defendants' failure to adjudicate the Petition will continue indefinitely, and Plaintiff will continue to suffer the consequences of his designation so long as Defendants persist in refusing to render a final decision on the Petition.

58.     Defendants' delay is unreasonable as a matter of law and constitutes agency action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1) and § 555(b). Therefore, Plaintiff is entitled to an order compelling Defendants to issue a final determination on the Petition within a date certain, as set by this Court.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

16

A.  Issue an order compelling Defendants to promptly adjudicate Plaintiff's Petition for Administrative Reconsideration, dated May 18, 2023, within a date certain to be set by the Court;

B.  Retain jurisdiction over this action to ensure Defendants' timely compliance with any order entered by the Court, including by enforcing the date certain set for adjudication of Plaintiff's Petition;

C.  Award Plaintiff his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

D.  Grant such other and further relief as the Court may deem just and proper.

Dated: May 19, 2026

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Attorney for Plaintiff*

17